UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED PROBATION OFFICERS
ASSOCIATION et al.,                                          :

                Plaintiffs,                       :         OPINION AND ORDER

      -v.-                                                   :
                               21 Civ. 218 (RA) (GWG)
CITY OF NEW YORK,                                           :

               Defendant.                     :
-------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs — the United Probation Officers Association and five current or former

probation officers employed by the City of New York — have moved the Court for discovery

sanctions pursuant to Federal Rules of Civil Procedure 37(b) and 16(f).[1]  Plaintiffs' motion is

denied.

I.       Background

Plaintiffs brought this putative class action against defendant, the City of New York, on

January 11, 2021, alleging discriminatory employment practices.  See Complaint, filed Jan. 12,

2021 (Docket # 5).  In May 2023, after several rounds of motion practice before Judge Abrams,

the case proceeded to discovery in relation to plaintiffs' anticipated motion for class certification.

---

[1] See Notice of Motion for Sanctions, filed Aug. 1, 2025 (Docket # 210); Memorandum of Law in Support of Plaintiffs' Motion for Sanctions, filed Aug. 1, 2025 (Docket # 212), at 1 ("Mem."); Declaration of Yetta G. Kurland, filed Aug. 1, 2025 (Docket # 211) ("Kurland Decl."); Memorandum of Law in Opposition to Plaintiffs' Motion for Sanctions, filed Sept. 12, 2025 (Docket # 213) ("Opp."); Declaration of Susan P. Scharfstein, filed Sept. 12, 2025 (Docket # 214) ("Scharfstein Decl."); Memorandum of Law in Reply to Defendant's Opposition, filed Oct. 3, 2025 (Docket # 218) ("Reply"); Declaration of Yetta G. Kurland, filed Oct. 3, 2025 (Docket # 217).

See Civil Case Management Plan & Scheduling Order, filed May 22, 2023 (Docket # 57) ("May 22, 2023 Order").

Discovery in this action has been unusually contentious and have involved numerous requests to resolve discovery disputes. On January 6, 2025, plaintiffs filed a letter raising certain disputes relating to deposition witnesses. See Letter from Yetta G. Kurland, dated Jan. 6, 2025 (Docket # 178). Plaintiffs concluded the letter by asking for permission to move to "strike Defendant's pleadings and [sic] in the alternative draw a negative inference from Defendant's failure to produce" deposition witnesses. Id. at 1. In response, the Court suggested that the "better course" would be to try to resolve the impasse. Order, dated Jan. 21, 2025 (Docket # 187), at 1. The Court then stated:

> If, however, plaintiffs wish to forgo these efforts and instead take their chances that the [defendant's] conduct to date will warrant the sanctions they seek, they may file a letter to the Court . . . . The Court will grant any such request on the understanding that the filing of this letter will preclude . . . plaintiffs from taking any further action to seek the depositions and that the Court's only determination will be whether preclusive sanctions are warranted based on conduct to date.

Id. at 2. Several months later, plaintiffs cited this order in seeking once again to move for discovery sanctions. See Letter from Yetta G. Kurland, dated July 8, 2025 (Docket # 206) ("July 8, 2025 Letter"). We ruled as follows:

> As the Court has previously held, plaintiffs may either seek to rectify any purported deficiencies in the discovery process or move for sanctions on the understanding that they will get no further discovery. They cannot do both. Plaintiffs have now elected to seek sanctions. In light of the wording of Docket # 189, the Court will not prevent plaintiffs from filing their proposed motion.

Memorandum Endorsement, dated July 11, 2025 (Docket # 209) ("July 11, 2025 Order"). The instant motion was filed several weeks later.

In this motion, plaintiffs seek to strike defendant's pleadings or, alternatively, to draw certain inferences against defendant and preclude it from using certain belatedly produced

2

evidence. See Mem. at 1. For convenience, we will refer to these types of sanctions collectively as "preclusive sanctions."

      II.       Legal Standards

      A. Rule 37(b)

"Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012). Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," which may include various enumerated sanctions. Fed. R. Civ. P. 37(b)(2)(A). These include providing adverse inference instructions, precluding evidence, and striking pleadings. See Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii).

The Second Circuit has articulated four factors to guide a court's consideration of sanctions under Rule 37: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted) (cleaned up). The four Agiwal factors "are not exclusive, and they need not each be resolved against" a party to warrant sanctions. S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010).

Under Rule 37, "a district court has wide discretion in sanctioning a party for discovery abuses." Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999) (citation omitted). Nonetheless, because "Rule 37 permits the imposition of 'just' sanctions[,] the severity of

sanction[s] must be commensurate with the non-compliance." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).  Further, the district court should be guided by the purposes of discovery sanctions, namely, "(1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3) to serve as a general deterrent effect on the case and on other litigants as well." Erdman v. Victor, 345 F.R.D. 60, 62 (S.D.N.Y. 2024) (citation and internal quotation marks omitted); accord Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979).

B.  Rule 16(f)

Federal Rule of Civil Procedure 16(f)(1) provides in relevant part that a court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C).  "[T]he standards to be applied in imposing sanctions under Rule 16 are identical to the familiar standards contained in Rule 37." Fonar Corp. v. Magnetic Plus, Inc., 175 F.R.D. 53, 55 (S.D.N.Y. 1997) (collecting cases); accord Icon Int'l, Inc. v. Elevation Health LLC, 347 F.R.D. 274, 285-86 (S.D.N.Y. 2024).

III.    DISCUSSION

A.  The Record

"The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed." Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986); accord Loc. 3621, EMS Officers Union, DD-37, AFSCME, AFL-CIO v. City of New York, 2021 WL 134566, at *3 (S.D.N.Y. Jan. 14, 2021).  "The party seeking sanctions bears the initial burden of demonstrating non-compliance with a court order." Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., 328 F.R.D. 100, 119 (S.D.N.Y. 2018) (citation omitted).  Here, plaintiffs assert

4

that defendant "violated every discovery and scheduling order this Court has issued."  Reply at 1.

(Elsewhere, plaintiffs allow that defendant might not have violated "a handful" of court orders.

Mem. at 23.)  They detail 17 instances in which defendant purportedly violated the Court's

orders.  See id. at 2-20.  We examine each in turn.

### 1.  The May 22, 2023 Order

Plaintiffs assert that defendant failed to comply with every deadline in the Court's May

22, 2023 scheduling order.  See Mem. at 2.  Under that order, initial disclosures were due on

June 5, 2025.  May 22, 2023 Order, at 1.  Defendant missed this deadline by one day.  See Def.'s

Initial Disclosures, annexed as Ex. A to Kurland Decl. (Docket # 211-1).  The parties' first

interrogatories and requests for production were due on July 20, 2023.  May 22, 2023 Order, at 2.

Defendant missed this deadline by one day.  See Def.'s 1st Set of Interrogs. & Req. for

Production of Docs., annexed as Ex. B. to Kurland Decl. (Docket # 211-2).  Document

production was to be completed by September 21, 2023.  May 22, 2023 Order, at 2.  The record

reflects that, on August 25, 2023, defendant, with plaintiffs' consent, wrote Judge Abrams to

request modification of the May 22, 2023 scheduling order (including a new October 13, 2023

deadline for document production).  See Proposed Civil Case Management Plan & Scheduling

Order, filed Aug. 25, 2023 (Docket # 63-1).  Judge Abrams did not rule on the parties' request,

as she referred this case to the undersigned.  See Order, dated Aug. 28, 2023 (Docket # 64).  On

October 3, 2023, the parties jointly wrote to request adjournment of all deadlines sine die while

they tried to settle this case.  See Letter from Yetta G. Kurland & Stephen Suhovsky, dated Oct.

3, 2023 (Docket # 66).  We granted the request.  See Memorandum Endorsement, dated Oct. 3,

2023 (Docket # 67).  When settlement efforts proved fruitless, we issued a new scheduling order

on January 17, 2024, superseding the May 22, 2023 scheduling order.  See Order, dated Jan. 17, 2024 (Docket # 79) ("January 17, 2024 Order").

In sum, while defendant violated aspects of the May 22, 2023 scheduling order, the violations were de minimis or an adjournment had already been agreed to by plaintiffs.

### 2.  Defendant's Answer

Plaintiffs assert that defendant answered their amended complaint on June 14, "2025," [sic] when the deadline to do so was June 9, 2023.  Mem. at 2.  In fact, defendant filed an answer on June 14, 2023, five days after the deadline.  See Answer, filed June 14, 2023 (Docket # 60). We do not consider this delay as a basis for sanctions because it does not show violation of "an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), or "a scheduling or other pretrial order," Fed. R. Civ. P. 16(f)(1)(C).

### 3.  Settlement Talks

Plaintiffs assert that defendant engaged in settlement talks between October 2023 and January 2024 in bad faith and with the intention of delaying discovery.  See Mem. at 3. Plaintiffs provide no support for this assertion.  Plaintiffs also assert that defendant's counsel failed to file a notice of appearance by the January 16, 2024 deadline we set.  See id. at 3-4. Indeed, defendant's counsel filed the notice one day late.  See Notice of Appearance, filed Jan. 17, 2024 (Docket # 80).  Again, this is a de minimis violation.

### 4.  The January 17, 2024 Order

Plaintiffs assert that defendant failed to comply with "any" of the deadlines in the Court's January 17, 2024 scheduling order.  Mem. at 4.  Per that order, defendant was to respond by January 31, 2024 to requests for productions first served by plaintiffs in July 2023.  See January 17, 2024 Order, at 1.  Plaintiffs state, "More than two months after the deadline . . . Plaintiffs

6

received for the first time an unsigned document on April 4, 2024 purporting to be Defendant's Responses to Plaintiffs' Interrogatories and Request for Production of Documents." Mem. at 4; see Def.'s Resps. & Objs. to Pls.' 1st Set of Interrogs. & 1st Req. for Production of Docs., annexed as Ex. G to Kurland Decl. (Docket # 211-7). Defendant contends that it produced "728 pages of documents" on April 1, 2024, and "nearly 4,000 pages" by "early May 2024." Opp. at 15. However, defendant does not state whether it responded to plaintiffs' requests for production by January 31, 2024. Based on plaintiffs' representation, we conclude that defendant responded to plaintiffs' requests for production well past this deadline — a violation of the January 17, 2024 scheduling order.

As for the remaining deadlines in the January 17, 2024 scheduling order, the parties jointly wrote to the Court on April 23, 2024 to request an extension. See Letter from Yetta G. Kurland & Ernst Bonaparte, dated Apr. 23, 2024 (Docket # 81) ("April 23, 2024 Letter"). We granted the parties' request. See Memorandum Endorsement, dated Apr. 23, 2024 (Docket # 82) ("Apr. 23, 2024 Order").

We do not view defendant's violation of the January 17, 2024 scheduling order as significant. Plaintiffs themselves recognized that their discovery requests were large in scope and required time to be properly addressed. This is reflected that plaintiffs' effort to enlarge the deadlines that they now complain were violated. See April 23, 2024 Letter. Indeed, the parties' jointly composed letter recognized that defendant "ha[s] been working to produce discovery in this matter, but there remains both document discovery and depositions that are still outstanding." Id. at 1.

5. The April 23, 2024 Order

Plaintiffs assert that defendant failed to comply with "any" of the deadlines in the Court's

April 23, 2024 order, which extended the deadlines in the January 17, 2024 scheduling order. Mem at 5.  The first extended deadline fell on Friday, May 10, 2024, when document production was to be completed.  Apr. 23, 2024 Order, at 1.  On Monday, May 13, 2024, one business day past this deadline, the parties jointly requested another extension, which we granted.  See Memorandum Endorsement, dated May 14, 2024 (Docket # 85) ("May 14, 2024 Order").  The May 10, 2024 deadline to complete document production was thereby pushed back to June 21, 2024.  May 14, 2024 Order, at 1.  In light of the parties' agreement to extend the deadlines in the April 23, 2024 order, we do not view defendant's conduct as justifying any sanction.

      6.   The May 14, 2024 Order

Plaintiffs assert that defendant failed to comply with various deadlines in the Court's May 14, 2024 order, which also extended the deadlines in the January 17, 2024 scheduling order. First, plaintiffs claim that defendant "refus[ed] to produce outstanding documents ordered produced by the June 21, 2024 deadline."  Mem. at 6.  Next, plaintiffs claim that defendant "refus[ed] to produce witnesses that had been noticed for depositions by the July 22, 2024 deadline."  Id.  Further, plaintiffs claim that defendant "cancelled scheduled depositions" of two fact witnesses.  Id.  Defendant observes that it requested another extension of the relevant deadlines on June 18, 2024.  Opp. at 17; see Letter from Shemori Corinthian, dated June 18, 2024 (Docket# 86).  That same day, plaintiffs requested a pre-motion conference in anticipation of moving to compel production from defendant.  See Letter from Yetta G. Kurland, dated June 18, 2024 (Docket # 87).  We denied both requests.  See Memorandum Endorsement, dated June 20, 2024 (Docket # 89) ("June 20, 2024 Order").[2]

---

[2] We denied plaintiffs' request because it failed to comply with paragraph 2.A of the Court's Individual Practices, which requires parties to meet and confer before bringing discovery disputes to our attention.  See June 20, 2024 Order, at 2.  Plaintiffs indicated that defendant had

We cannot say that any violation of the May 14, 2024 order was of any significance. Defendant sought to extend the deadlines we set in this order before they expired, and while we denied defendant's application, we did so "without prejudice to a new application following the resolution of the discovery disputes" which occupied the parties' attention, and the Court's, for the next month.  See June 20, 2024 Order, at 2.

### 7.  The June 20, 2024 Order

Plaintiffs assert that defendant failed to comply with the June 20, 2024 order, which directed defendant's attorney Shemori Corinthian to "immediately" identify defendant's lead attorney and contact plaintiffs' counsel to discuss the parties' outstanding discovery disputes. June 20, 2024 Order, at 2; see Mem. at 7.  We also directed defendant's lead attorney to file a notice of appearance by June 21, 2024.  June 20, 2024 Order, at 2.  Corinthian never filed the letter as ordered, and we are unsure on the record before us if she contacted plaintiffs' counsel as ordered.  However, defendant's attorney Hyatt M. Howard filed a notice of appearance on June 21, 2024.  See Notice of Appearance, filed June 21, 2024 (Docket # 90).  That same day, Howard filed a letter identifying himself as the lead attorney for defendant and indicating that defendant had "contacted Plaintiffs' counsel to meet and confer about . . . outstanding discovery issues." Letter from Hyatt M. Howard, dated June 21, 2024 (Docket # 91), at 1.

Defendant obviously complied with the spirit of the Court's order even if it did not follow this order to the letter.

---

refused to meet and confer.  See Letter from Yetta G. Kurland, dated June 18, 2024 (Docket # 87), at 2.  Defendant indicated otherwise.  See Letter from Hyatt M. Howard, dated June 21, 2024 (Docket # 91), at 2.

#### 8.   The June 26, 2024 Order

Plaintiffs next assert that defendant violated a June 26, 2024 order we issued in response to a letter from counselor Howard purporting to "advise the Court of the status of discovery." See Memorandum Endorsement, dated June 26, 2024 (Docket # 96) ("June 26, 2024 Order"), at 1; Mem. at 7-8.  As this letter "was not required or even contemplated," we ordered defendant to refrain from similar filings.  June 26, 2024 Order, at 3.  Plaintiffs state, "Far from heeding the Court's June 26, 2024 Order, Defendant's counsel's efforts to complete discovery have been highly adversarial and unproductive."  Mem. at 8.  But plaintiffs point to no evidence that defendant violated the June 26, 2024 order, and in fact, our own review of the record reflects that defendant since refrained from similar filings.

#### 9.   The July 11, 2024 Order

Plaintiffs assert that defendant violated a July 11, 2024 order requiring it to provide deposition dates for fact witnesses whose deposition it did not oppose and explain its opposition to the deposition of the remaining fact witnesses by July 15, 2024.  See Order, dated July 11, 2024 (Docket # 100) ("July 11, 2024 Order"), at 2; Mem. at 8-9.  But the record reflects that defendant complied with this aspect of the order by means of a July 15, 2024 letter to plaintiffs. See Def.'s Letter, annexed as Ex. N to Kurland Decl. (Docket # 211-14).

The July 11, 2024 order also required defendant to confer with plaintiffs' counsel "as to all objections to any Rule 30(b)(6) notices" by July 17, 2019 and provide deposition dates for Rule 30(b)(6) witnesses whose deposition it did not oppose by July 19, 2024.  July 11, 2024 Order, at 2.  The parties duly conferred on July 17, 2024.  See Letter from Yetta G. Kurland, dated July 17, 2024 (Docket # 101), at 1.  While the record does not reveal whether defendant

10

provided deposition dates for Rule 30(b)(6) witnesses whose deposition it did not oppose, plaintiffs do not specifically claim that defendant missed the July 19, 2024 deadline.

The July 11, 2024 order also required defendant to confer with plaintiffs' counsel "regarding any other outstanding discovery issues . . . no later than July 18, 2024," with a view to agreeing on a "firm date to complete production." July 11, 2024 Order, at 2. The record reflects that the parties conferred as ordered on July 18, 2024 but could not agree on "firm date to complete production." See Letter from Yetta G. Kurland, dated July 19, 2024 (Docket # 103), at 1. Although plaintiffs claim that defendant violated the July 11, 2024 order by "refus[ing] to complete outstanding document production," Mem. at 9, our order did not in fact require completion. Rather, it required defendant to "give a date on which it will complete all document production or provide a detailed explanation of why it is unable to do so." July 11, 2024 Order, at 2. Plaintiffs do not specifically explain how this aspect of the Court's order was violated.

Thus, we do not view defendant as having violated the July 11, 2024 order.

10. The July 30, 2024 Conference

Plaintiffs assert that defendant violated several orders issued orally at a July 30, 2024 discovery conference. See Mem. at 9-10. First, plaintiffs claim defendant failed to file a letter regarding a spreadsheet previously produced to plaintiffs by the August 6, 2024 deadline we set, see id. at 9, but defendant in fact timely filed the letter, see Letter from Hyatt M. Howard, dated Aug. 6, 2024 (Docket # 113). Second, plaintiffs claim defendant "refus[ed] to meet and confer as ordered." Mem. at 9. But it appears from subsequent correspondence that a conferral took place or was at least scheduled. See Letter from Susan P. Scharfstein, dated Aug. 6, 2024 (Docket # 114), at 1; Letter from Yetta G. Kurland, dated Aug. 7, 2024 (Docket # 115), at 1. Third, plaintiffs claim defendant "failed to schedule . . . four fact witnesses by the November 27,

11

2024 deadline set by the Court." Mem. at 9. Putting aside that this deadline was not set at the July 30, 2024 conference, it appears three of these four fact witnesses were deposed by November 27, 2024. See Opp. at 19-20. As for the fourth fact witness, the record reflects that her deposition was slated for September 30, 2024 but did not take place then due to a last-minute change to plaintiffs' counsel's schedule. See Letters from Yetta G. Kurland, dated Sept. 29, 2024 (Docket ## 132, 133, 135); Letter from Susan P. Scharfstein, dated Sept. 30, 2024 (Docket # 136).

Therefore, we do not view defendant as having violated any of the orders identified by plaintiffs issued during the July 30, 2024 conference.

### 11. The November 7, 2024 Order

Plaintiffs assert that defendant violated a November 7, 2024 order directing defendant's counsel to "telephone" plaintiffs' counsel and confer on various discovery disputes. Memorandum Endorsement, dated Nov. 7, 2024 (Docket # 148); see Mem. at 10. But it appears defendant's counsel telephoned plaintiffs' counsel on November 8, 2024. See Opp. at 23; Letter from Susan P. Scharfstein, dated Nov. 14, 2024 (Docket # 150), at 1. The attorneys conferred on November 12, 2023. See Letter from Yetta G. Kurland, dated Nov. 12, 2024 (Docket # 149), at 1. Thus, this order was not violated.

### 12. The November 14, 2024 Order

Plaintiffs claim that defendant violated a November 14, 2024 order directing the parties to meet "to work out all issues regarding depositions" on November 18 or 19, 2024, for "at least 60 minutes or until all issues are resolved, whichever occurs first." Order, dated Nov. 14, 2024 (Docket # 152); see Mem. at 10-11. The parties indeed met on November 19, 2024, see Letter from Yetta G. Kurland, dated Nov. 19, 2024 (Docket # 155), at 1, but plaintiffs say that

"Defendant came 20 minutes late and stopped participating after 41 minutes, without any issues being resolved, putting themselves on mute and otherwise not participating," Mem. at 11. Defendant insists that it was only 10 minutes late (and only because "plaintiffs' counsel had not, as promised, timely circulated the Zoom link"). Opp. at 24. Defendant further denies that it stopped participating or muted itself. See id.

On the conflicting representations before us, we decline to find that defendant violated our November 14, 2024 order.

### 13. The November 26, 2024 Order

Plaintiffs assert that defendant violated a November 26, 2024 order directing the parties to meet and confer with regard to plaintiffs' Rule 30(b)(6) notice. See Mem. at 12. Plaintiffs claim that defendant "simply refused to meet." Id. The record reflects that defendant offered to meet "early the week of December 10." See E-mail from Hyatt M. Howard to Yetta G. Kurland, annexed as Ex. L to Scharfstein Decl. (Docket # 214-12). Thus, we do not view this order as having been violated.

### 14. The December 3, 2024 Order

Plaintiffs assert that defendant violated a December 3, 2024 order directing the parties to "immediately schedule" the meet and confer contemplated by our November 26, 2024 order to take place on December 12, 2024 (or a later date, should the parties so agree). Mem. at 13 (quoting Order, dated Dec. 3, 2024 (Docket # 164), at 1). On December 11, 2024, plaintiffs wrote to inform the Court that defendant "flouted" the December 3, 2024 order by ignoring plaintiffs' myriad attempts to schedule the meet and confer. Letter from Yetta G. Kurland, dated Dec. 11, 2024 (Docket # 169), at 1. We ordered defendant to file a letter by December 12, 2024 explaining its "efforts to set a date immediately after December 3, 2024, that was convenient for

13

both sides as required by Docket # 164." Order, dated Dec. 11, 2024 (Docket # 170). Defendant thereupon filed a letter attaching emails exchanged by the parties' attorneys. See E-mails between Susan P. Scharfstein and Yetta G. Kurland, annexed as Ex. A. to Letter from Susan P. Scharfstein, dated Dec. 12, 2024 (Docket # 173-1). The emails show that plaintiffs' counsel tried to schedule the meet and confer on December 5, 2024 but received no response until December 9, 2024, when defendant's counsel replied, "We are trying to work out a time that fits your parameters, as, at the moment, none of those times are available." Id. at 5. This reply was two business days after plaintiffs' counsel's e-mail. Thus, defendant did not act "immediately," but we do not view this failure as a significant enough to support a request for sanctions.

        15. The January 22, 2025 Order

Plaintiffs assert that defendant violated a January 22, 2025 order. See Mem. at 16. That order directed the parties to "immediately arrange for a telephone call" to discuss "non-deposition-related discovery disputes." Memorandum Endorsement, dated Jan. 22, 2025 (Docket # 189). Plaintiffs contend that defendant simply "refused to confirm a date to meet and confer regarding the outstanding document discovery." Mem. at 17 (quoting Letter from Yetta G. Kurland, dated Jan. 27, 2025 (Docket # 190), at 1). At the time, defendant did not dispute plaintiffs' contention, informing us in a January 29, 2025 letter that it had yet to arrange a call with plaintiffs because "plaintiffs have refused to identify what they are complaining about." Letter from Susan P. Scharfstein, dated Jan. 29, 2025 (Docket # 191), at 1. In response, we rejected defendant's "effort to avoid live or telephonic conferrals with plaintiffs" and ordered it "to meet and confer with respect to any matters requested by plaintiffs . . . including but not limited to document requests." Memorandum Endorsement, dated Jan. 29, 2025 (Docket # 192). There is a colorable argument that the Court's January 22, 2025 order could be read to required

conferral only over identified disputes, even if defendant misconstrued it.  We thus do not view defendant's conduct as supporting a request for sanctions.

16. The February 13, 2025 Conference

Bizarrely, plaintiffs' moving brief with respect to the orders issued by the Court at a February 13, 2025 discovery conference consists in large part of excerpts from a reply letter plaintiffs previously addressed to the Court in July 2025.  See Mem. at 18-19 (quoting Letter from Yetta G. Kurland, dated July 11, 2025 (Docket # 208)) ("July 11, 2025 Letter").  These excerpts contain unexplained responses to arguments defendant made prior to the reply letter.  Plaintiffs supply little additional detail in their brief beyond the reply letter .  Instead, they offer sweeping allegations supported by only a few examples and some statements not followed by citations to the record (in violation of paragraph 2.D of the Court's Individual Practices).  See id. at 18.

It is not our job or defendant's to scour the record to determine what exactly plaintiffs are complaining about with respect to the orders issued by the Court at this discovery conference or what evidence might exist to support their arguments.  Thus, we examine only the intelligible allegations of misconduct provided by plaintiffs in in their moving brief.  We of course ignore the additional detail and arguments — as well as additional evidence — supplied in plaintiffs' reply brief, see Reply at 18-31, as defendant had no opportunity to respond.

Plaintiffs' brief, even if only in the most cursory way, appears to argue (1) that defendant's attorneys improperly referred to the wrong version of plaintiff's Rule 30(b)(6) notice, Mem. at 17-18; (2) that Rule 30(b)(6) deponents Christopher Erath and Andra McGill failed to present themselves for their depositions on time, id. at 18; (3) that Rule 30(b)(6) deponent Albert Culler was not properly prepared, id. at 19; (4) that Rule 30(b)(6) deponent

15

Christelle N. Onwu refused to answer questions, id.; and (5) that Rule 30(b)(6) deponent Jason Saturnin was not properly prepared and that defendant's counsel improperly directed him not to answer a question on the topic of his preparation, id.  Plaintiffs cite exclusively to excerpts of depositions.  See id. at 18-19 (citing Excerpts from Dep. Trs., annexed as Ex. B to July 11, 2025 Letter (Docket # 208-2)) ("Deposition Excerpts").  Before addressing these alleged violations, we note that plaintiffs' confusing and truncated presentation hinders the Court's ability to make any findings as to what occurred, let alone findings of misconduct on defendant's part.  Nonetheless, we now examine plaintiffs' presentation, keeping in mind that they bear the burden of proving any violations.  See Syntel Sterling Best Shores Mauritius Ltd., 328 F.R.D. at 119.

By way of background, on February 13, 2025, we held a conference to resolve the parties' disagreement concerning 19 topics on which plaintiffs sought Rule 30(b)(6) depositions.  See Transcript of Feb. 13, 2025 Conf., filed Mar. 31. 2025, (Docket # 202) ("Tr.").  During the conference, we considered defendant's objections to the topics, see Tr. 11:17-20, 15:17-24, working off of a letter prepared by plaintiffs' counsel, see Letter from Yetta G. Kurland, dated Feb. 7, 2025 (Docket # 194) ("February 7, 2025 Letter"), as contemplated by an earlier order, see Order, dated Jan. 21, 2015 (Docket # 187) ("January 21, 2025 Order").  After considering defendant's objections, we approved the topics but with a number of modifications.  See Tr. 11:17 to 51:11.

The claim that defendant was working off an earlier list of Rule 30(b)(6) deposition topics instead of the list as revised by the Court is so confusingly presented in plaintiffs' brief that the Court cannot make any findings that defendant's conduct was sanctionable.  As a matter of logic, it is hard to see how defendant would have gained any advantage by using the wrong list, strongly suggesting that there was no bad faith or intentional conduct on its part.

16

As to the claim that defendant failed to appear for the scheduled depositions of Erath and McGill, plaintiffs merely supply quotations from deposition transcripts showing that these deponents did not appear on particular dates when plaintiffs' counsel appeared.  See Mem. at 18 (quoting July 11, 2025 Letter).  Plaintiffs do not explain how these absences came about (for example, by what means the depositions were noticed) or reveal whether the parties' communications beforehand made clear that the deponents would not be appearing on those dates.  While we accept that the deponents were absent on the dates plaintiffs identify, this fact alone cannot supply a basis for sanctions.  For all we know, defendants informed plaintiffs in advance they would not be appearing at the deposition but plaintiffs' counsel proceeded with the charade of holding the deposition anyway which would be an obviously wasteful act of gamesmanship.   For what it is worth, Erath's deposition was rescheduled on the date it was supposed to take place.  See Excerpt from Tr. of Dep. of Christopher Erath, annexed as Ex. A to July 11, 2025 Letter (Docket # 208-1), at 4:2-18.

Turning to the claim that Culler was not properly prepared, we begin by noting the law regarding Rule 30(b)(6) witnesses.  "Producing an unprepared [Rule 30(b)(6)] witness is tantamount to a failure to appear."  Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya, 248 F.R.D. 126, 152 (S.D.N.Y. 2007) (quoting Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997)).  But "to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas."  Id. (quoting Bank of N.Y., 171 F.R.D. at 151).  Plaintiffs allege that Rule 30(b)(6) deponent Culler was unprepared to answer questions "on any topics."  Mem. at 19 (quoting July 11, 2025 Letter).  But plaintiffs do not back up this statement by showing that each topic they asked Culler about was met with no response.  Instead, they quote Culler as saying that he was

17

"not aware of specific topics."  Id.  The mere fact that a witness was not aware in advance of "specific topics" to be addressed at a Rule 30(b)(6) deposition does not by itself show that the witness did not substantively respond to actual questions that were asked.  Our own perusal of the Culler deposition transcript supplied by defendant shows that Culler in fact had knowledge of multiple topics and was prepared to give testimony on such topics.  See, e.g., Excerpt from Tr. of Dep. of Albert Culler, annexed as Ex. N to Scharfstein Decl. (Docket #214-14), at 79:8 to 80:12.  Of course, "a Rule 30(b)(6) witness is not 'expected to know and testify about every detail' on a topic," and on the record before us, we obviously cannot find that Culler was so unprepared as to warrant sanctions, even if plaintiffs did not get answers regarding some dimensions of the deposition topics.  K.S. v. City of New York, 2025 WL 307348, at *2 (S.D.N.Y. Jan. 27, 2025) (quoting Holden v. Port Auth. of N.Y. & N.J., 2018 WL 11222516, at *1 (S.D.N.Y. Dec. 12, 2018)).

Next, plaintiffs claim that Rule 30(b)(6) deponents Onwu and Saturnin "at times" refused to answer questions.  Mem. at 19 (quoting July 11, 2025 Letter).  But the meager examples provided of such conduct plainly do not justify sanctions.  See id.  We thus have no basis on which to determine that their answers were "egregious and not merely lacking in desired specificity in discrete areas."  Kyoei Fire & Marine Ins. Co., 248 F.R.D. at 152; see IBM Corp. v. Micro Focus (US) Inc., 2024 WL 535730, at *1 (S.D.N.Y. Jan. 3, 2024) (discovery sanctions not "warranted" when "the deposition excerpts submitted by the parties did not reveal any 'egregious' inadequacies"), objection overruled, 2024 WL 1242534 (S.D.N.Y. Mar. 22, 2024).

Plaintiffs also claim that defendant's counsel improperly directed Saturnin not to answer a question.  Mem. at 19 (quoting July 11, 2025 Letter).  The excerpt of the Saturnin deposition provided by plaintiffs in support of this contention would lead the reader to believe that counsel

18

violated Fed. R. Civ. P. 30(c)(2), which forbids a direction not to answer except in specific circumstances.  This was not the case, however.  Plaintiffs quotation from the deposition transcript omitted statements of counsel showing that the direction not to answer was based on an assertion of attorney-client privilege.  See Excerpts from Tr. of Dep. of Jason Saturnin, annexed as Ex. S to Scharfstein Decl (Docket # 214-19), at 146:2 to 147:13.  This is a proper basis for an instruction not to answer under Fed. R. Civ. P. 30(c)(2).  Plaintiffs never obtained a ruling from a Court that the instruction was improper.  The omission of this critical information from plaintiffs' memorandum of law was misleading and without justification.

Plaintiffs separately assert that defendant failed to produce Rule 30(b)(6) witnesses by "the deadline set by the Court."  Mem. at 18.  But plaintiffs do not cite to any record evidence concerning what the deadline was and which Rule 30(b)(6) witnesses were belatedly produced.

For these reasons, we do not find that any conduct identified by plaintiffs warrants sanctions.

17. Plaintiffs' Supplemental Interrogatories and Requests for Production

Lastly, plaintiffs advert to defendant's objections to their supplemental interrogatories and requests for production served on June 17, 2025.  See Mem. at 20.  Defendant responded to these discovery requests 30 days later, as required under Federal Rules of Civil Procedure 33 and 34.  See Def.'s Resps. to Pls.' Supp. Set. of Interrogs. & 1st Req. for Production of Docs., annexed as Ex. U to Kurland Decl. (Docket # 211-21).  In responding, defendant objected "on the grounds that the Court has ruled that, having elected to move for Rule 37 sanctions, plaintiffs will get no further discovery."  Id. at 1.  Indeed, plaintiffs had sought leave to move for discovery sanctions on July 8, 2025 — before defendant responded.  See July 8, 2025 Letter.  We granted

19

leave "on the understanding that [plaintiffs] will get no further discovery."  July 11, 2025 Order.

The Court cannot blame defendant for reading this language as barring further discovery.

In any event, defendant's objections raise no failure to obey a court order, the only basis

for plaintiffs' motion.  See Mem. at 20 (citing Fed. R. Civ. P. 16(f)(1)(C) and 37(b)(2)(A)).

### B.   The Agiwal Factors

As noted, we recognize that the Agiwal factors "are not exclusive, and they need not each

be resolved against" a party to warrant the imposition of sanctions.  S. New England Tel. Co.,

624 F.3d at 144.  Nonetheless, we address each factor next.

### 1.   Willfulness and Reason for Noncompliance

Here, there is no indication that defendant acted in bad faith with respect to any of the

alleged violations, given that the alleged violations were either unproven, de minimis, or the

subject of an explanation inconsistent with bad faith.

### 2.   Duration of Noncompliance

"[T]he severity of sanction[s] must be commensurate with the non-compliance."

Shcherbakovskiy, 490 F.3d at 140.  Thus, "the length of defiance can inform the propriety of a

particular sanction."  Funk v. Belneftekhim, 861 F.3d 354, 368 (2d Cir. 2017) (citation omitted).

We have noted several deadlines that were missed by just a few days and other deadlines that

were the subject of extensions by agreement or Court order.  These deadlines invariably revolved

around contentious discovery issues.  In light of defendant's lack of willfulness and the one-

sided nature of discovery in this case, where the lion's share of the burden fell on defendant, we

do not view even the longer violations as justifying any sanction.  See Peterson v. Mejia, 2010

WL 3855364, at *2 (S.D.N.Y. Oct. 1, 2010) ("[I]n the absence of a deliberate and willful pattern

of intransigence, short delays of two or three months typically do not warrant dismissal.")
(citations omitted).

>   3.   Whether Defendant Was Warned of the Consequences of Noncompliance

"Although formal warnings often precede the imposition of serious sanctions," warnings

are not "an absolute condition precedent." Daval Steel Prods., a Div. of Francosteel Corp. v.

M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir. 1991).  "Parties and counsel have no absolute

entitlement to be 'warned' that they disobey court orders at their peril." Id.  That said, "severe

sanctions like dismissal or default should be imposed only if the party has been warned that such

a sanction will follow from continued non-compliance and has nevertheless refused to comply."

Urbont v. Sony Music Ent., 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) (citations

omitted); see also Grammar v. Sharinn & Lipshie, P.C., 2016 WL 525478, at *4 (S.D.N.Y. Feb.

8, 2016) ("Courts are generally hesitant to impose terminating sanctions before warning the

offending litigant.") (citation omitted).

Plaintiffs have pointed to no evidence in the record that defendant was warned of any

consequences of noncompliance with our orders, let alone of the severe consequences that

plaintiffs now seek to impose.  To the contrary, the Court recalls that its efforts were directed

exclusively at trying to resolve discovery disputes.  The Court at no time (to its recollection) ever

suggested that defendant's conduct warranted the harsh sanctions plaintiffs are seeking.

>   4.   Efficacy of Lesser Sanctions

Plaintiffs ask us to strike defendant's pleadings — or in the alternative, to grant 15

adverse inference instructions and preclude defendant from using any discovery produced after

specific deadlines — and to award fees and costs "associated with Defendant's bad faith

actions." Mem. at 28. Because we conclude that no sanctions should be imposed, it is not necessary to consider whether "lesser" sanctions are appropriate.

Nonetheless, we pause to note that the sanctions sought by plaintiffs are without justification. Striking a defendant's pleadings is "akin to dismissing the action altogether." World Wide Polymers, Inc., 694 F.3d at 159; see Icon Int'l, Inc., 347 F.R.D. at 294 ("striking . . . pleadings would result in a dismissal of its case and lead to an entry of default"). Dismissal "is a drastic remedy that should be imposed only in extreme circumstances." John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988) (quoting Salahuddin, 782 F.2d at 1132). Courts have "entered default judgments or dismissed claims as sanctions for parties that entirely failed to participate in discovery, appear at depositions, attend court conferences, or provide any justification for noncompliance." In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 673 F. Supp. 3d 345, 364 (S.D.N.Y. 2023) (collecting cases). This is obviously not the case here.

"An adverse inference instruction is another severe sanction." Scantibodies Lab'y, Inc. v. Church & Dwight Co., Inc., 2016 WL 11271874, at *35 (S.D.N.Y. Nov. 4, 2016) (citation and internal quotation marks omitted), adopted by, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017). A court may grant an adverse inference instruction related to the non-production or belated production of evidence must at least show "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party . . . had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Id. at *17 (quoting In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 125 (S.D.N.Y. 2007)). Again, apart from

22

the Agiwal factors not supporting the imposition of sanctions, we do not view defendant as having a culpable state of mind.

Finally, preclusion of evidence is also considered an "extreme sanction," one plainly unwarranted for the reasons already stated. Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988).

Plaintiffs mention in the briefest terms that they request attorney's fees "associated with Defendant's bad faith actions." See Mem. at 28-29. While they ask leave to make a supplemental submission as to the "amount" of such fees, id. at 29, they provide no explanation or argument as to their entitlement to the fees. To the extent they seek fees for the expense of briefing the instant motion, Fed. R. Civ. P. 37(b)(2)(C) provides for attorney's fees only where a party has been successful in obtaining a "further" order granting the motion for sanctions. See Fed. R. Civ. P. 37(b)(2)(A). Fed. R. Civ. P. 16(f) similarly contemplates attorney's fees only for a party that is successful in obtaining an order reflecting that there has been sanctionable conduct. Plaintiffs have not obtained any such order as a result of the instant motion. Additionally, given that plaintiffs limit their request for fees to those "associated" with defendant's "bad faith actions," we have not found any such bad faith.[3]

---

[3] Plaintiffs at one point in their moving brief make a request for $17,400 for "legal fees and expert fees" they expended to prepare for settlement discussions Mem. at  3. The basis for this request is that defendants acted in bad faith in requesting an adjournment to conduct settlement negotiations given that they later decided that settlement discussions would not be "fruitful." Id. In light of the record on this question, see Docket #73 (explaining the defendant's perception of the discussions on settlement), the Court cannot find that the City engaged in any improper conduct.

23

Conclusion

For the foregoing reasons, plaintiffs' motion (Docket # 210) is denied.

Dated:  January 12, 2026

New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

24